## W. T. DAVIS *v.* COMMONWEALTH.

[Abstract Kentucky Law Reporter, Vol. 6—655, 658.]

**Continuance of Criminal Cause.**

The affidavit by a defendant in a criminal cause for a continuance on account of absent witnesses will be refused where an application fails to show what the witness would swear to or that his testimony is as to a material matter, or facts showing diligence on the part of the applicant to procure the witnesses' attendance or that the attendance can be had if the cause is continued.

**Admission by Commonwealth to Prevent Continuance of Criminal Trial.**

> No continuance of a criminal cause shall be granted on the application of the defendant on account of the absence of a witness if the attorney for the commonwealth admits as true what the defendant has stated in his affidavit the absent witness will prove.

**Hypothetical Questions.**

> Generally speaking a hypothetical question must be based upon proven facts only, but the object is to elucidate the truth and it is not so technical as to require that the exact language of witnesses who have testified to the facts upon which the question is based shall be used. Such questions may be based upon any state of facts which any of the evidence sustains.

**Conspiracy Proven by Circumstances.**

> Conspiracy to commit crime can rarely be proven by direct or positive evidence. It can usually only be shown by slight circumstances which, woven together, make a complete whole.

APPEAL FROM WOODFORD CIRCUIT COURT.

March 7, 1885.

OPINION BY JUDGE HOLT:

The appellant, Dr. Walker T. Davis, seeks by this appeal to reverse a life sentence to the penitentiary under a joint indictment against him and Lucretia Munday, charging them as co-conspirators with the murder of her husband, Lowry Munday, by morphine poisoning. His first complaint is that instead of a trial being ordered, a continuance should have been granted upon the affidavit, which he filed. It was asked because of the absence of five witnesses, and was refused upon the attorney for the commonwealth consenting upon the record, that the statement in the affidavit of what two of them would testify to might be read upon the trial and taken as true. They however, appeared, and testified for the defendant upon the trial.

As to one of the remaining three the affidavit did not disclose sufficient diligence. While it stated that a subpoena had been issued for him, yet it failed to state that it had ever been placed in the hands of the proper officer for service; and in fact, aside from that before the defendant could have it done, he heard that the proposed witness had left the state. It is not proper diligence to rely upon

hearsay in such a matter; moreover it is not clear that the testimony of this witness was material, as it related to a conversation with the deceased the date of which was not disclosed by the affidavit.

Of the two other absent witnesses, one would have spoken of a matter, the truth of which the state had been required to admit in order to get a trial, and to which as the affidavit stated, one of the two witnesses would testify, and whose appearance the defendant chose to compel by attachment, and he then did so testify, while the defendant contented himself with no effort to compel the attendance of this one by like process.

The remaining absent witness was one Edgar. At the term of court next preceding the trial the defendant had obtained an order to take his deposition and had done so. The affidavit for a continuance did not state that he would testify to anything that he had not detailed at length in his deposition; nor did it state that he was then physically able to come to court or that he could be brought, or that his condition had in any way changed from what it was when the leave was obtained to take this deposition. To get this privilege the appellant had filed his affidavit in which it was stated that the witness was seventy years old, nearly blind and physically unable to attend court; and that after the reading of this affidavit and the order allowing the taking of his deposition, the lower court properly overruled the motion to continue the case by reason of his absence, although the affidavit for a continuance stated that his personal presence in court was necessary that the defendant might obtain the full benefit of his testimony. The deposition was read to the jury, and our code provides that this may be done when the witness is physically unable to attend at the trial, and that a case shall not be continued on account of the absence of a witness if the attorney for the commonwealth admits as true what the defendant has stated in his affidavit the absentee will prove. Crim. Code, Secs. 153-189.

It is urged that upon the trial certain hypothetical questions were improperly asked of the medical experts. It was in evidence that the defendant, Lucretia Munday, had said that the appellant had told that she had said that her husband had gotten up from his bed at four o'clock on the morning of the day of his death, and

while up had stirred the fire and told her that his head ached; had then laid down and in a short time, by which one of witnesses says he understood her to mean a few minutes, was in a comatose condition. It was also in testimony that the appellant had said that he had found the deceased in a condition of coma at four o'clock in the morning. Upon the strength of this testimony it was asked whether it would be possible for one who had taken a fatal dose of morphine to talk and walk in an ordinary manner, and then be in a comatose condition in ten or fifteen minutes. We do not think the questions were improper. It is true, speaking generally, that questions of this character must be based upon proven facts only; and undoubtedly in a case where they are admitted or agreed upon the questions must be based upon what is so admitted or agreed. But the object of the rule is to elucidate the truth, and it is not so technical as to require that the exact language of the witnesses, who have testified to the facts upon which the questions are based, shall be used; nor does it mean that if the testimony upon one side of a case tends to show one side of the case, and that upon the other, that therefore and because the testimony is conflicting, hypothetical questions are improper. Under such circumstances they can be based upon any state of facts which any of the testimony sustains. The deceased was an uneducated man and seemingly subject to the influence of those in whom he had confidence. He was a farmer upon a small scale and a man of little means, and at his death there was an insurance upon his life in different companies amounting to over twenty thousand dollars.

The appellant had married Lowry Munday's daughter in 1881, and the relationship as well as the enormity of the crime repels the idea of guilt; but the jury were the proper judges of this question, and as the testimony was conflicting their conclusion can not be disturbed and upon a view of the whole case did not prejudice his substantial rights.

The insurance policies were all payable to the wife Lucretia Munday, with the exception of one for two thousand ($2,000) dollars in the Grangers' Society and which was taken out before the appellant had any acquaintance with the family, so far as the record shows, and which was made payable to her and the children of the deceased;

and the motive assigned for the crime is the obtention of the insur-
ance money.

There is no question as to the sudden death and the existence of
the heavy insurance. Neither can there reasonably be any doubt
upon a view of all the testimony, but what the deceased died from
morphine poison. It was found in his stomach after his death, and
the theory that he took it with suicidal intent is somewhat conflict-
ing with the one also urged by the defense, that it was placed in the
stomach after it had been taken from the body for the purpose of a
chemical examination, and that he in fact died from apoplexy.

Upon a charge of conspiracy in the commission of crime the
testimony must necessarily take a wide range, else it could rarely
be shown, since positive evidence of its existence is rarely attainable;
and yet courts for the proper protection of life and liberty should
carefully guard against the abuse of this rule. It can usually only be
shown by a slight circumstance, which, woven together, make a
complete whole.

Therefore in such a case, while there must be some connection
between the fact to be proven and the circumstances offered to sup-
port it, yet any fact which shows the relation of the parties charged
with the crime or which is necessary to introduce or explain another
fact in issue, or which afforded an opportunity for any transaction
which is properly in issue may be proven. Any fact may be shown
which tends to show the relation of the conspiring parties and that
facilities or motives existed for the commission of the crime. Even
evidence tending to prove a distinct offense may be admissible if so
connected as to constitute a part of one entire conspiracy or if it
explains or shows motives or facilities for the commission of the
one in question.

In this case any circumstance which tended to show, however
slightly, that the parties charged with the crime were endeavoring
to get control of the deceased and his property; that they were in
pursuit of this object by agreement or concerted action, was com-
petent.

The policies of insurance were admissible in order to show its
amount, and even if it can be considered that the introduction of
the applications for the insurance as evidence in the case were
prejudicial to the defendant, yet they were not inter alias acta be-

cause he had more or less agency with each one and the insurance in each case, save that taken in the Grange Society, which was the only one obtained prior to his marriage with the daughter. He either furnished the application or recommended the applicant, or gave an examination certificate as a physician, or paid the fees and assessments; and the application in the case of the Grange Society could certainly have not been prejudicial to the defendant, as others of similar import furnished by him were in evidence. Moreover it appeared from it that the insurance taken before the defendant had anything to do with it, was for the children as well as the wife.

The testimony relating to the financial worth of the parties, the purchase of the ferry property, and the deeds to the real estate, at least tended to show their ability to carry such an insurance upon the life of the deceased, and the control and influence which the wife and son-in-law had obtained over him; while that relating to the mother of Lucretia Munday, and the money she is supposed to have had at her death and its probable payment toward the ferry property and then its subsequent conveyance to the appellant, tended to show the influence the appellant had obtained over Lucretia Munday. The evidence as to the insurance upon the life of the defendant's sister, Mrs. Long, illustrated his financial ability to purchase the valuable property, which in the fall of 1882 he was proposing to buy, and which he said that he could fully pay for about March, 1883, and in any event it was not prejudicial to him; and this is also true of the testimony detailing what Lucretia Munday said to the administrator of her mother; also that relating to the borrowing of money by the deceased to pay for the Barkley property and what he said as to its purchase as well as his health.

The appellant was present when the sworn statement was made by Lucretia Munday before James Wilson, the object of which was to obtain the insurance upon one of the policies upon the husband's life; and while it was done, after his death of course, yet the presence of the defendant when it was taken rendered it competent testimony, and its exclusions, after being made in his presence, would have in effect been saying to the jury that no conspiracy had been shown, which was a question to be left to them upon the testimony.

The objections to the testimony are too numerous to refer to them

in detail, but we have carefully examined those not already alluded to, and find that the testimony so objected to was not material or of such a character that it could have prejudiced the defendant's substantial rights.

The instructions to the jury were concise and in our opinion presented properly the entire law of the case and the judgment is affirmed.

Judgment *affirmed.*

*P. B. Thompson, Sr., J. W. Gillespie, Porter & Wallace,* for appellant.

*D. L. Thornton, P. W. Hardin,* for appellee.